BANK OF BLACK CREEK, Respondent, vs. MACONEGHY and another, Appellants.

*November 3—December 2, 1941.*

For the appellants there was a brief by *Benton, Bosser, Becker & Parnell,* attorneys, and *David L. Fulton* of counsel, all of Appleton, and oral argument by *Mr. Fulton* and *Mr. Alfred C. Bosser.*

For the respondent there was a brief by *Albert H. Krugmeier* and *S. M. Gmeiner, Jr.,* both of Appleton, and oral argument by *Mr. Gmeiner.*

WICKHEM, J. The quite peculiar facts involved in this litigation must be stated in some detail in order that their significance be appreciated.

Gertrude Maconeghy is a widow living in the village of Black Creek with her daughter, defendant Pearl Weisenberger, and her son-in-law, defendant F. J. Weisenberger. On October 20, 1919, Karl and Anna Rechberger purchased the mortgaged premises, and on the same day executed a mortgage to the Bank of Black Creek to secure the payment of $6,200 according to the terms of six promissory notes numbered 1 to 6, inclusive. Notes number 1, 2, 3, 4 were for $1,000 and matured on October 20, 1925. Note number 5 was for $1,000 and its date of maturity was October 20, 1923. Note number 6 was for $1,200 and its date of maturity was October 20, 1921. The Bank of Black Creek was the payee and mortgagee. On February 7, 1920, Mrs. Maconeghy held certificates of deposit of the Bank of Black Creek of the total face value of $2,010.23. On that date she cashed the certificates and invested $2,000 of the proceeds in the purchase of notes 3 and 4, receiving as evidence of the purchase a card in the handwriting of plaintiff's cashier describing the notes, stating the date when interest began and containing the notation "Assigned to Gertrude and Pearl Maconeghy—Jt. Notes in care of Bank—G. H. Peters." The notes were kept in the bank and Mrs. Maconeghy had in her possession nothing but the card to evidence the assignment. This card was produced at the trial by defendants. The Rechbergers continued to pay interest upon all the notes up to some time in 1931 and the interest upon notes 3 and 4 was from time to time paid to Mrs. Maconeghy by plaintiff in the form of certificates of deposit totaling $1,089.72. Some of these certificates were payable to Gertrude Maconeghy and some were payable to Gertrude Maconeghy and Pearl Weisenberger, jointly. The proceeds of these certificates were eventually placed in a savings account in the bank in the name of "Gertrude Maconeghy

or Pearl Weisenberger either or survivor." On November 18, 1927, $100 was paid on principal of the loan and applied to one of the notes still owned by plaintiff. On November 6, 1925, the Rechbergers were indebted to George Kitchen, brother of Mrs. Maconeghy, in the sum of $2,860, and to secure this debt executed and delivered to Kitchen a second mortgage on the premises, and also a chattel mortgage on certain of the personal property of the farm. On November 15, 1932, the Rechbergers executed to George Kitchen another chattel mortgage as further security for the indebtedness of $2,860. After the depression Rechbergers defaulted in interest payments and made none after October 6, 1931. On March 25, 1933, the Rechbergers executed a warranty deed to Kitchen and Mrs. Maconeghy "jointly or the survivor," and warranted the premises free of incumbrances "except a mortgage in favor of Bank of Black Creek." On the same date the Rechbergers executed to George Kitchen and Gertrude Maconeghy, jointly, a bill of sale of the personal property of the farm. The plaintiff claims and the trial court found that the deed and bill of sale of March 25, 1933, were pursuant to a settlement between the Rechbergers, Kitchen, Mrs. Maconeghy, and the bank, whereby the bank waived interest accrued to October 20, 1932, in the sum of $366.50, George Kitchen paid the Rechbergers $300 in cash and released them from liability on their indebtedness to him, and Gertrude Maconeghy surrendered her interest in notes numbered 3 and 4. Mrs. Maconeghy denied being present at the time the deed and bill of sale were drawn, denied that she had ever agreed to cancel or surrender her interest in the notes or that she had authorized her brother, George Kitchen, to do so on her behalf. On July 23, 1936, George Kitchen died leaving his entire estate to defendant, Gertrude Maconeghy, and defendant Weisenberger was appointed administrator of the estate. On January 19, 1937, final judgment was entered assigning the estate to Gertrude Maconeghy. The decree recited that deceased was an owner of the mort-

gaged premises in joint tenancy with Gertrude Maconeghy and adjudged termination of the joint tenancy. Shortly after the conveyance of March 25, 1933, the mortgaged premises were leased to the Rechbergers on shares and the Rechbergers continued in possession until the spring of 1937. During all this period Kitchen managed the farm and collected all of the lessors' one half of the proceeds of the lease. He paid interest to the bank on its notes of $4,100 for the years 1933, 1934, and 1935. Mrs. Maconeghy and Mrs. Weisenberger received nothing, either under the lease or as interest upon their notes. Following Kitchen's death Weisenberger operated the farm, first as administrator and later as tenant. He paid operating expenses and interest on the bank's share of the mortgage debt. During this period Weisenberger paid interest to the bank for the years 1936, 1937, and 1938 as well as taxes and insurance. There never was any surplus for Mrs. Maconeghy and her daughter during this period, but the bank received $1,275.50 in interest.

Plaintiff's contentions are that Mrs. Maconeghy, while taking an assignment of notes 3 and 4 in the names of her daughter and herself, jointly, really made this investment on her own behalf and fully controlled and owned the notes; that on March 25, 1933, as a part of a deal with the bank, her brother, and the Rechbergers, she surrendered her interest in the notes and took a half interest in the equity jointly with Kitchen; that thereafter the parties proceeded upon this arrangement, the bank being paid its interest on the note and Mrs. Maconeghy neither getting nor claiming any interest, but in every respect assuming the position of a proprietor or owner of the farm; that she has abandoned her interest in the notes and her share in the foreclosure proceeds and that she is estopped from setting up any claim to these proceeds.

Defendants, on the other hand, claim that there is no evidence to sustain the findings of the trial court that Mrs. Maconeghy did not intend to vest any interest in these notes

in her daughter; that there is no evidence that Mrs. Maconeghy or Mrs. Weisenberger ever surrendered the notes or their interest in them; that there is no basis for any estoppel; that the bank has had all the benefit of this transaction, by having its interest paid all of these years while Mrs. Maconeghy and Mrs. Weisenberger got no interest, and that there is no equity in the bank's position.

We conclude that defendant's position is sound. The only direct evidence as to what took place in March, 1933, is that of a disinterested witness called by the plaintiff who was active in real-estate matters in that vicinity. He testified positively that Mrs. Maconeghy was not present when the Kitchen —Rechberger—bank deal was made, whereby the property was deeded to Kitchen and Maconeghy. This might not be so significant in view of the plaintiff's claim that Kitchen was defendant's agent, were it not for the fact that he also testifies that no mention was made in the negotiations concerning the surrender of Mrs. Maconeghy's notes. In the face of this testimony it is clear to us that an agreement by Mrs. Maconeghy to surrender her notes cannot be spelled out of the fact that she never thereafter received any interest; or that the notes disappeared about that time and have not been seen since. It is not claimed that Mrs. Weisenberger took any part in the settlement and it is not necessary to consider the various contentions concerning her joint ownership of the notes. Plaintiff relies strongly upon notations on the four notes to the effect that interest was settled on March 25, 1933, but this does not bear upon the controversy at all since concededly the bank, Kitchen, and the Rechbergers did make a settlement of interest. There is also a photostatic copy of the bank's ledger sheet relating to these four notes in which the name of "Rechberger, mortgagor" is stricken and the notation "deeded to Geo Kitchen & Gert Maconeghy subject to mtg $4,100" appears. The admissibility of this as an account book or entry in the regular course of business is strenuously

contested by defendants but we deem it unnecessary to determine the point.

The entry cannot be considered to be any more than a conclusion by the entrant as to the legal effect of the deed and the deed is in evidence. The deed warrants against incumbrances, except a "mortgage in favor of Bank of Black Creek." The mortgage was to the Black Creek Bank. Since the subsequent interest of defendants, Maconeghy and Weisenberger, was naturally not disclosed by the mortgage, the deed aptly described the mortgage, and this exhausted its purpose. There was no reference in the deed to an indebtedness of $4,100. Since the bank was interested only to the amount of $4,100, the entry might have been a proper one for it to make on its ledger but it proves nothing in respect of a surrender by defendants or either of them.

We also fail to discover any basis for estoppel. True, Mrs. Maconeghy was half owner after 1933 but she got no interest and apparently got nothing out of the property. The bank did reduce its interest and make some concessions but during all the subsequent period it received interest on its own notes regularly. Since defendants were not parties to any agreement or representation there was nothing for the plaintiff to rely upon to its prejudice and it certainly did not change its position because of the failure of defendants to claim interest after the alleged settlement.

In view of the foregoing, we conclude that the trial court was in error and that defendants are entitled to share with plaintiff in the proceeds of the foreclosure.

*By the Court.*—Judgment reversed, and cause remanded with directions for further proceedings in accordance with this opinion.